FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

2015 JUL -1 PM 1: 12

U.S. DISTRICT COURT
DISTRICT OF OHIO
CLEVELAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | SUPERSEDING INDICTMENT |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.  3:15CR0024 |
| | ) | |
| AROLDO RIGOBERTO CASTILLO-SERRANO, aka BRUNO LOPEZ-ZALAS, | ) | JUDGE JAMES G. CARR |
| ANA ANGELICA PEDRO JUAN aka | ) | Title 8, United States Code, Sections |
| JUANITA aka ERICA MAISONET, | ) | 1324(a)(1)(A)(ii), 1324(a)(1)(A)(iv), |
| CONRADO SALGADO SOTO, and | ) | 1324(a)(1)(A)(v)(II), 1324(a)(1)(B)(i), and |
| PABLO DURAN, JR. | ) | 1324(a)(4)(A); Title 18, United States |
| | ) | Code, Sections 2, 1001(a)(2), 1512(b)(3), |
| Defendants. | ) | 1589(a), 1589(b), 1594(a), and 1594(b) |

The Grand Jury charges:

## GENERAL ALLEGATIONS

### The Entities

1.      At all times material to this Superseding Indictment, Trillium Farms ("Trillium") was a Limited Liability Corporation incorporated in Ohio.  Trillium owned and operated a number of large egg farms in the Marion, Ohio area.

2.      Trillium conducted operations in the Northern District of Ohio, Western Division, and elsewhere.

3.      Oakridge Estates was a mobile home park with numerous individual trailer homes, located at 6605 Marion-Agosta Road, Marion, Ohio.

4.      Papagos, Inc. ("Papagos") was a for-profit corporation incorporated in Ohio, and owned and operated by defendant CONRADO SALGADO SOTO.

5. Haba Corporate Services, Inc. ("Haba") was a for-profit corporation incorporated in Ohio, and owned and operated by P.D.R. and E.D.R.

6. Second Generation Farm Services, L.L.C. ("Second Generation") was a subsidiary of Haba and a for-profit corporation incorporated in Ohio. Second Generation was owned and operated by PABLO DURAN, JR.

7. Rabbit Cleaning Services, Inc. ("Rabbit Cleaning") was a for-profit company incorporated in Ohio, and owned and operated by Bartolo Dominguez, a separately indicted co-defendant.

8. Trillium contracted with Haba and Second Generation to provide manual laborers for work at Trillium's egg farms. Haba and Second Generation hired Papagos, Rabbit Cleaning, and other sub-contractors to find the manual laborers, transport them to and from the egg farms, and supervise their work at the egg farms. The laborers' work included cleaning the chicken coops, loading and unloading crates of chickens, de-beaking the chickens, and vaccinating chickens.

## The Victims

9. Victim 1 is a Guatemalan man born in 1986.

10. Victim 2 is a Guatemalan man born in 1999. At all times relevant to this Superseding Indictment, he was a minor.

11. Victim 3 is a Guatemalan man born in 1997. At all times relevant to this Superseding Indictment, he was a minor.

12. Victim 4 is a Guatemalan man born in 1997. At all times relevant to this Superseding Indictment, he was a minor.

13.     Victim 5 is a Guatemalan man born in 1998. At all times relevant to this Superseding indictment, he was a minor.

14.     Victim 6 is a Guatemalan man born in 1998.  At all times relevant to this Superseding Indictment, he was a minor.

15.     Victim 7 is a Guatemalan man born in 1989.

16.     Victim 8 is a Guatemalan man born in 1997.  At all times relevant to this Superseding Indictment, he was a minor.

17.     Victim 9 is a Guatemalan man born in 1997.  At all times relevant to this Superseding Indictment, he was a minor.

18.     Victim 10 is a Guatemalan man born in 1996.  At all times relevant to this Superseding Indictment, he was a minor.

The Defendants

19.     The Defendants, AROLDO RIGOBERTO CASTILLO-SERRANO aka BRUNO LOPEZ-ZALAS, ANA ANGELICA PEDRO JUAN aka JUANITA aka ERICA MAISONET, and CONRADO SALGADO SOTO, recruited and smuggled Guatemalan nationals, many of them minors, to hold them in a condition of forced labor as agricultural workers in the Marion, Ohio, area.

20.     AROLDO RIGOBERTO CASTILLO-SERRANO is a Guatemala national who was a leader in the human trafficking organization.  CASTILLO-SERRANO was illegally present in the United States from in or around December 2002 until in or around March 2013.

21.     AROLDO RIGOBERTO CASTILLO-SERRANO recruited the workers in Guatemala and organized the financial aspects of the smuggling.

3

22.     AROLDO RIGOBERTO CASTILLO-SERRANO owned, operated, and controlled a set of trailers at 6605 Marion-Agosta Road in Marion, Ohio, (hereinafter "the Trailers"), at which the victims were housed.

23.     In or around March 2013, after AROLDO RIGOBERTO CASTILLO-SERRANO returned to Guatemala, he continued in his role as a leader in the human trafficking organization.

24.     ANA ANGELICA PEDRO JUAN is a Guatemala citizen.  She illegally entered the United States in or around February 2011.

25.     ANA ANGELICA PEDRO JUAN was a manager in the human trafficking organization.  In or around March 2013, after CASTILLO-SERRANO returned to Guatemala, PEDRO JUAN took over CASTILLO-SERRANO's duties at the Trailers, including collecting the victims' paychecks.

26.     CONRADO SALGADO SOTO was a member of the human trafficking organization responsible for managing the victims' employment. SALGADO SOTO, or a company privately held by him, contracted to provide workers to Trillium Farms, an egg farm with multiple locations in the Northern District of Ohio. He supervised the victims' labor and transported the victims to and from work.

### Office of Refugee Resettlement Sponsor Care Program

27.     The Office of Refugee Resettlement ("ORR") is an office within the U.S. Department of Health and Human Services.  One of the responsibilities of ORR is to protect the welfare of unaccompanied minor children who are not legally present in the United States and help them transition to the care and custody of a qualified adult sponsor.

28.     Potential adult sponsors must complete form 0970-0278, the Family Reunification Application ("the Application"), and submit it to ORR before a minor will be released to the

4

sponsor's custody. The Application requires the potential sponsor to affirm that the information contained in the application is true and accurate. The Application also requires the applicant to affirm that the sponsor will abide by the terms of the "Sponsor Care Agreement," including, but not limited to, providing for "the physical and mental well-being of the minor ... including enrolling the minor in school; providing medical care when needed; protecting the minor from abuse, neglect, and abandonment."

COUNT 1

(Forced Labor Conspiracy – 18 U.S.C. § 1594)

The Grand Jury further charges:

29.     The allegations set forth in paragraphs 1 through 28 are re-alleged and incorporated by reference in this count, as though fully restated herein.

30.     Beginning in or around January 2011, and continuing through on or about December 17, 2014, in the Northern District of Ohio, Western Division, and elsewhere, AROLDO RIGOBERTO CASTILLO-SERRANO aka BRUNO LOPEZ-ZALAS, ANA ANGELICA PEDRO JUAN aka JUANITA aka ERICA MAISONET, and CONRADO SALGADO SOTO, did knowingly and intentionally combine, confederate, conspire and agree with each other, and others known and unknown to the Grand Jury, to commit offenses against the United States, as set forth in 18 U.S.C. § 1589, specifically:

31.     To provide and obtain, and attempt to provide and obtain, the labor and services of ten victims, nationals of Guatemala, identified herein as Victims 1 through 10, whose identities are known to the Grand Jury, by means of:

    a.     force, threats of force, physical restraint, and threats of physical restraint to the victims and other persons;

    b.     serious harm and threats of serious harm to the victims and other persons;

5

      c.     the abuse and threatened abuse of law and legal process; and

      d.     a scheme, plan, and pattern intended to cause the victims to believe that, if

             that they did not perform such labor or services, they and other persons

             would suffer serious harm or physical restraint.

32.     To knowingly benefit, financially and by receiving anything of value, from participation in the venture outlined above, knowing and in reckless disregard of the fact that the venture has engaged in the providing and obtaining of labor or services by the above means.

MANNER AND MEANS OF THE CONSPIRACY

33.     It was part of the conspiracy that the Defendants, AROLDO RIGOBERTO CASTILLO-SERRANO, ANA ANGELICA PEDRO JUAN, and CONRADO SALGADO SOTO, together with others known and unknown to the Grand Jury, targeted and recruited Guatemalan nationals for smuggling into the United States to work as agricultural laborers.

34.     It was part of the conspiracy that, starting in or around March 2014, the Defendants focused their recruitment efforts on individuals under the age of 18, believing them to be easier to bring successfully into the country, easier to control, and harder workers.

35.     It was part of the conspiracy that the Defendants obtained deeds to real property from the victims' families to secure the victims' debts for being smuggled into the United States, and that the Defendants retained the deeds to those properties if any portion of the smuggling debts were unpaid or any dispute between the parties remained.

36.     It was part of the conspiracy that the Defendants, together with others known and unknown to the Grand Jury, brought the identified victims and others to the United States illegally.

6

37.    It was part of the conspiracy that Defendant CASTILLO-SERRANO enticed some of the minor victims to illegally enter the United States by falsely representing that they would be able to attend school once they arrived in the United States.

38.    It was part of the conspiracy that the Defendants, along with others known and unknown to the Grand Jury, submitted false and fraudulent Applications to ORR in which they represented themselves and their associates to immigration officials as the minor victims' relatives and family friends, in order to have the minor victims released to the Defendants' custody. In doing so, the Defendants and their associates affirmed that the victims would go to school and be protected from abuse.

39.    It was part of the conspiracy that the Defendants compelled the victims to live in trailers owned or controlled by Defendants CASTILLO-SERRANO and PEDRO JUAN and other conspirators known and unknown to the Grand Jury, in order to keep the victims under the Defendants' control, to isolate them from others, and to force them to pay more money to Defendants and their co-conspirators in the form of rent, in addition to their smuggling debts.

40.    It was part of the conspiracy that the Trailers were often in substandard conditions, and that the threat of living in substandard trailers was used by the Defendants to control the victims.

41.    It was part of the conspiracy that the Defendants directed victims to work at one of Trillium's farms in the Marion, Ohio, area, and other locations, under the supervision of Defendants SALGADO SOTO, PABLO DURAN JR., along with Bartolo Dominguez and others known and unknown to the Grand Jury.

42.    It was part of the conspiracy that the minor victims and some adult victims did not receive paychecks or full cash equivalents for their labor, but instead that SALGADO SOTO

7

delivered their paychecks directly to PEDRO JUAN, who transferred them to CASTILLO-SERRANO and his associates.

43.     It was part of the conspiracy that the minor victims were given only small amounts of money for their food and other needs, and that Defendants refused the minors' requests to obtain more of their paychecks.

44.     It was part of the conspiracy that the victims were not given receipts for their smuggling debt payments or any accounting of their remaining smuggling debts.

45.     It was part of the conspiracy that Defendant CASTILLO-SERRANO manipulated the smuggling debts of some victims by, among other means, not telling the victims what their smuggling debts would be until after they incurred it and, later, unilaterally increasing victims' smuggling debts beyond what had initially been agreed to.

46.     It was part of the conspiracy that Defendants CASTILLO-SERRANO, PEDRO JUAN, and others known and unknown to the Grand Jury, threatened the victims and their family members with physical harm, including death, if they did not continue to work and surrender their paychecks.

47.     It was part of the conspiracy that Defendant PEDRO JUAN hit a victim when he indicated he did not want to surrender his paycheck to her.

48.     It was part of the conspiracy that the Defendants benefitted financially, and by receiving anything of value, from participating in the venture.

49.     It was part of the conspiracy that the Defendants used a combination of threats, humiliation, deprivation, financial coercion, debt manipulation, and monitoring to establish a pattern of domination and control over the victims, to create a climate of a fear and helplessness that would compel their compliance with the conspirators' orders, and to isolate them from

8

anyone who might intervene to protect them from the conspirators and expose the conspirators' unlawful acts.

## ACTS IN FURTHERANCE OF THE CONSPIRACY

50.     In furtherance of the conspiracy, and to accomplish the objects of the conspiracy, the Defendants committed and caused to be committed the following acts, among others, in the Northern District of Ohio, Western Division, and elsewhere:

### Victim 1

51.     In or around November 2011, CASTILLO-SERRANO recruited and enticed Victim 1 to illegally travel to the United States. CASTILLO-SERRANO represented to Victim 1 that the transportation and smuggling fees would be loaned by CASTILLO-SERRANO, which Victim 1 would repay through agricultural work. CASTILLO-SERRANO asked for and received a deed belonging to Victim 1's father to secure the smuggling debt. An associate of CASTILLO-SERRANO delivered Victim 1 to the Trailers. CASTILLO-SERRANO informed Victim 1, after Victim 1's arrival in Ohio, that Victim 1 owed him $16,000. CASTILLO-SERRANO directed Victim 1 to live at the Trailers.

52.     Between in or around November 2011 and in or around December 2013, CASTILLO-SERRANO informed Victim 1 repeatedly that he was required to work at the egg farms until he repaid his smuggling debt. CASTILLO-SERRANO collected all of Victim 1's paychecks from him. CASTILLO-SERRANO regularly required Victim 1 to work six or seven days a week, twelve hours per day, including times when Victim 1 was injured.

53.     Starting in or around 2013, when CASTILLO-SERRANO returned to Guatemala, PEDRO JUAN assumed responsibility for collecting Victim 1's paychecks.

54.     Between in or around November 2011, and in or around December 2013, CASTILLO-SERRANO threatened to kill Victim 1 and other workers if they said they would not work at one of the farms. CASTILLO-SERRANO threatened to kill his family in Guatemala and told Victim 1 that he (CASTILLO-SERRANO) had people in Guatemala who could assault others at his command.

55.     Between in or around November 2011, and in or around December 2013, ANA ANGELICA PEDRO JUAN reported on the activities of Victim 1 and others to CASTILLO-SERRANO. Victim 1 and others complained to PEDRO JUAN that they did not have enough money for food, but PEDRO JUAN continued to withhold their paychecks.

56.     Between in or around November 2011, and in or around December 2013, SALGADO SOTO drove Victim 1 to work and supervised him there. SALGADO SOTO knew that Victim 1 was being forced to work and surrender his entire paychecks to CASTILLO-SERRANO and PEDRO JUAN.

<u>Victim 2</u>

57.     In or around June 2014, CASTILLO-SERRANO recruited Victim 2, a minor, to illegally travel to the United States. CASTILLO-SERRANO enticed Victim 2 by telling him that he would be permitted to attend school in the United States.

58.     On or about August 23, 2014, CASTILLO-SERRANO arranged to have an associate falsely represent himself to immigration officials as Victim 2's family friend and submit a fraudulent Family Reunification Application to ORR in order to have Victim 2 released to Defendants' associate. Once Victim 2 was released from immigration custody, CASTILLO-SERRANO and PEDRO JUAN required him to live at the Trailers and regularly work under SALGADO SOTO.

10

59.     Between in or about August 2014, and on or about December 17, 2014, the Defendants regularly required Victim 2, a minor, to do physically demanding work for six or seven days a week, twelve hours per day.  SALGADO SOTO withheld the paychecks of Victim 2, giving them directly to PEDRO JUAN. PEDRO JUAN withheld Victim 2's paychecks from him, giving him only small amounts of money for food and necessities.

60.     On multiple dates between in or about June 2014, and in or about December 17, 2014, PEDRO JUAN denied requests from Victim 2 that he be given more or all of his wages.

### Victim 3

61.     In or about June 2014, CASTILLO-SERRANO recruited Victim 3, a minor, to illegally travel to the United States. CASTILLO-SERRANO enticed Victim 3 by telling him that he would be permitted to attend school in the United States. CASTILLO-SERRANO asked for and received a deed belonging to Victim 3's uncle to secure the smuggling debt.

62.     On or about September 18, 2014, CASTILLO-SERRANO arranged to have an associate falsely represent himself to immigration officials as Victim 3's family friend and submit a fraudulent Family Reunification Application to ORR in order to have Victim 3 released to Defendants' associate. Once Victim 3 was released from immigration custody, CASTILLO-SERRANO and PEDRO JUAN required him to live at the Trailers and work at the egg farm under PABLO DURAN, JR. and other contractors associated with the Defendants.

63.     Between in or about June 2014, and on or about December 17, 2014, the Defendants regularly required Victim 3 to do physically demanding work for six or seven days a week, twelve hours per day.

64.     Between in or about June 2014, and on or about December 17, 2014, PABLO DURAN JR. and others associated with the Defendants withheld Victim 3's paychecks by giving

11

them directly to PEDRO JUAN. PEDRO JUAN withheld Victim 3's paychecks from him, giving him only small amounts of money for food and necessities.

65.    In or around fall 2014, the exact date unknown, Victim 3 contacted CASTILLO-SERRANO on the telephone and complained to CASTILLO-SERRANO about the work at the egg farm.  In response, CASTILLO-SERRANO degraded and demeaned Victim 3, calling him humiliating names and telling him that he was required to work for CASTILLO-SERRANO. Shortly after this conversation, CASTILLO-SERRANO and PEDRO JUAN moved Victim 3 to a trailer that was unsanitary and unsafe, with no bed, no heat, no hot water, no working toilets, and vermin.

66.    In or around the fall of 2014, the exact date unknown, but on the same date that Victim 3 complained to CASTILLO-SERRANO, CASTILLO-SERRANO called Victim 3's father in Guatemala and told Victim 3's father that he would shoot Victim 3's father in the head if Victim 3 did not continue to work for him.

### Victim 4

67.    In or around mid-2014, CASTILLO-SERRANO recruited Victim 4, a minor, to illegally travel to the United States. CASTILLO-SERRANO asked for and received a deed belonging to Victim 4's mother to secure the smuggling debt.

68.    On or about August 5, 2014, CASTILLO-SERRANO arranged to have an associate falsely represent himself to immigration officials as Victim 4's family friend and submit a fraudulent Family Reunification Application to ORR in order to have Victim 4 released to Defendants' associate. Once Victim 4 was released from immigration custody, CASTILLO-SERRANO and PEDRO JUAN required him to live at the Trailers and work under SALGADO SOTO.

12

69.     Between on or about August 5, 2014, and on or about December 17, 2014, the Defendants regularly required Victim 4 to do physically demanding work for six or seven days a week, twelve hours per day. SALGADO SOTO withheld Victim 4's paychecks by giving them directly to PEDRO JUAN. PEDRO JUAN withheld Victim 4's paychecks from him, giving him only small amounts of money for food and necessities.

Victim 5

70.     In or around mid-2014, CASTILLO-SERRANO recruited Victim 5, a minor, to illegally travel to the United States. CASTILLO-SERRANO asked for and received a deed belonging to Victim 5's father to secure the smuggling debt.

71.     On or about August 16, 2014, CASTILLO-SERRANO arranged to have an associate falsely represent himself to immigration officials as Victim 5's family friend and submit a fraudulent Family Reunification Application to ORR in order to have Victim 5 released to Defendants' associate. Once Victim 5 was released from immigration custody, CASTILLO-SERRANO and PEDRO JUAN required him to live at the Trailers and work under SALGADO SOTO.

72.     Between in or about August 2014, and on or about December 17, 2014, the Defendants regularly required Victim 5 to do physically demanding work for six or seven days a week, twelve hours per day.

73.     Between in or about August 2014, and on or about December 17, 2014, SALGADO SOTO, and others associated with the Defendants, withheld Victim 5's paychecks by giving them directly to PEDRO JUAN. PEDRO JUAN withheld Victim 5's paychecks from him, giving him only small amounts of money for food and necessities.

13

74.     In or around fall 2014, the exact date unknown, Victim 5 contacted CASTILLO-SERRANO on the telephone and requested additional money from his paychecks to send to his mother in Guatemala, who was ill. CASTILLO-SERRANO denied Victim 5's request for his earnings and threatened to harm Victim 5's family if Victim 5 disobeyed CASTILLO-SERRANO's orders.

Victim 6

75.     In or around mid-2014, CASTILLO-SERRANO recruited Victim 6, a minor, to illegally travel to the United States. CASTILLO-SERRANO asked for and received a deed belonging to Victim 6's father to secure the smuggling debt.

76.     On or about July 24, 2014, CASTILLO-SERRANO arranged to have PEDRO JUAN falsely represent herself to immigration officials as Victim 6's family friend and submit a fraudulent Family Reunification Application to ORR in order to have Victim 6 released to PEDRO JUAN's custody.  Once Victim 6 was released from immigration custody, CASTILLO-SERRANO and PEDRO JUAN required him to live at the Trailers and work under SALGADO SOTO.

77.     Between in or about August 2014, and on or about December 17, 2014, the Defendants regularly required Victim 6 to do physically demanding work for six or seven days a week, ten hours per day.

78.     Between in or about August 2014, and on or about December 17, 2014, Victim 6 suffered injuries due to the physically demanding work the Defendants required Victim 6 to perform.

79.     Between in or about August 2014, and on or about December 17, 2014, SALGADO SOTO, and other contractors affiliated with the Defendants, withheld Victim 6's

14

paychecks by giving them directly to PEDRO JUAN. PEDRO JUAN withheld Victim 6's

paychecks from him, giving him only small amounts of money for food and necessities.

80.     In or around fall 2014, the exact date unknown, PEDRO JUAN hit Victim 6 when

Victim 6 told her he did not want to give PEDRO JUAN his paychecks.

Victim 7

81.     In or about January 2011, CASTILLO-SERRANO recruited Victim 7 to illegally

travel to the United States. Victim 7's mother secured his $15,000 smuggling debt to

CASTILLO-SERRANO by assigning CASTILLO-SERRANO the deed to her land.

82.     Between approximately February 2011 and December 17, 2014, the Defendants

required Victim 7 to live in the Trailers, including a trailer without heat or running water.

83.     Between approximately February 2011 and December 2014, the Defendants

regularly required Victim 7 to work under SALGADO SOTO and Bartolo Dominguez to repay

his smuggling debt.

84.     Between approximately February 2011 and December 2014, the Defendants only

provided Victim 7 with small portions of his paychecks.

85.     In or around 2012, the exact date unknown, but after Victim 7 had paid

CASTILLO-SERRANO $15,000, the amount CASTILLO-SERRANO initially told Victim 7 he

owed for his smuggling fees, CASTILLO-SERRANO told Victim 7, for the first time, that his

smuggling debt was actually greater than $15,000 and that Victim 7 would have to continue to

work and pay CASTILLO-SERRANO or else Victim 7's mother would lose her land.

<u>Victim 8</u>

86.    In or about June 2014, CASTILLO-SERRANO recruited Victim 8, a minor, to illegally travel to the United States.

87.    Between in or about June 2014, and on or about December 17, 2014, the Defendants regularly required Victim 8 to do physically demanding work for six or seven days a week, twelve hours per day.

88.    Between approximately June 2014 and December 17, 2014, PABLO DURAN, JR. and other contractors associated with the Defendants, withheld Victim 8's paychecks by giving them directly to PEDRO JUAN. PEDRO JUAN withheld Victim 8's paychecks from him, giving him only small amounts of money for food and necessities.

<u>Victim 9</u>

89.    In or about April 2014, CASTILLO-SERRANO recruited Victim 9, a minor, to illegally travel to the United States.

90.    On or about June 6, 2014, CASTILLO-SERRANO arranged to have an associate falsely represent himself to immigration officials as Victim 9's family friend and submit a fraudulent Family Reunification Application to ORR in order to have Victim 9 released to Defendants' associate. Once Victim 9 was released from immigration custody, CASTILLO-SERRANO and PEDRO JUAN required him to live at the Trailers and work under SALGADO SOTO.

91.    M.C.G., an agent working at the direction of Defendants CASTILLO-SERRANO and PEDRO JUAN, told Victim 9 he was not permitted to leave the Trailers. M.C.G. threatened and demeaned Victim 9 and told him that he (M.C.G.) was reporting all of the minors' activities to CASTILLO-SERRANO.

16

92.     Between in or about June 2014, and on or about December 17, 2014, the Defendants regularly required Victim 9 to do physically demanding work for six or seven days a week, twelve hours per day.

93.     Between in or about June 2014, and on or about December 17, 2014, SALGADO SOTO withheld Victim 9's paychecks by giving them directly to PEDRO JUAN. PEDRO JUAN withheld Victim 9's paychecks from him, giving him only small amounts of money for food and necessities.

### Victim 10

94.     In or around mid-2013, CASTILLO-SERRANO recruited Victim 10, a minor, to illegally travel to the United States.  Victim 10's mother assigned CASTILLO-SERRANO the deeds to her land as collateral for Victim 10's smuggling debt.

95.     In or around late mid-2013, CASTILLO-SERRANO told Victim 10's mother that if Victim 10 did not work to repay his smuggling debt, CASTILLO-SERRANO would kill Victim 10 and his mother.

96.     On or about November 19, 2013, Victim 10 was brought to the trailers and told by the Defendants he had to work at the egg farms and surrender his paychecks to PEDRO JUAN. After Victim 10 entered his assigned trailer and saw that it was dilapidated and did not have heat, Victim 10 called an associate of his family and asked to be picked up from the Trailers.

### Witness Tampering and False Statements

97.     On or about December 18, 2014, PEDRO JUAN and CASTILLO-SERRANO agreed in a telephone call that PEDRO JUAN would mislead and lie to the FBI by telling them, among other things, that she did not know CASTILLO-SERRANO, that she only sent money to Guatemala as a favor to the victims, and that the victims received their full wages. They also

17

agreed that PEDRO JUAN would advise M.C.G. to give false, incomplete, and misleading information to the FBI.

98.    In or around December 2014 or January 2015, PEDRO JUAN advised M.C.G. to give false, incomplete, and misleading information to the FBI, specifically to deny that he knew anything about the venture.

99.    On or about December 23, 2014, Defendant PEDRO JUAN gave materially false, incomplete, and misleading information to an agent of the FBI by saying, among other things, that she did not have first-hand knowledge of CASTILLO-SERRANO's smuggling activities, that she did not withhold victims' wages from them, that she did not send victims' wages to Guatemalan accounts at CASTILLO-SERRANO's behest, that she did not have a close relationship with CASTILLO-SERRANO, that she was not in contact with CASTILLO-SERRANO, that she did not know where CASTILLO-SERRANO was, and that she did not advise M.C.G. to lie to the FBI.

All in violation of Title 18, United States Codes, Section 1594(b).

COUNT 2
(Forced Labor – 18 U.S.C. § 1589)

The Grand Jury further charges:

100.    The allegations set forth in paragraphs 1 through 28 and 33 through 56 are re-alleged and incorporated by reference in this count, as though fully restated herein.

101.    Beginning in or about July 2011, and continuing to on or about December 17, 2014, in the Northern District of Ohio, Western Division, and elsewhere, Defendants AROLDO RIGOBERTO CASTILLO-SERRANO aka BRUNO LOPEZ-ZALAS, ANA ANGELICA PEDRO JUAN aka JUANITA aka ERICA MAISONET, and CONRADO SALGADO SOTO, aiding and abetting each other, did knowingly provide and obtain the labor and services of Victim 1, and knowingly benefitted, financially and by receiving anything of value, from participation in a venture which provided and obtained the labor and services of Victim 1, knowing and in reckless disregard of the fact that the labor and services were obtained by means of force, threats of force, physical restraint, and threats of physical restraint to Victim 1 and other persons; by means of serious harm and threats of serious harm to Victim 1 and other persons; by means of the abuse and threatened abuse of law and legal process; and by means of a scheme, plan, and pattern intended to cause Victim 1 to believe that, if he did not perform such labor or services, he and other persons would suffer serious harm or physical restraint.

In violation of Title 18, United States Code, Sections 1589(a) and (b), and 2.

COUNT 3
(Forced Labor – 18 U.S.C. § 1589)

The Grand Jury further charges:

102.　　The allegations set forth in paragraphs 1 through 28, 33 through 50, and 57

through 60 are re-alleged and incorporated by reference in this count, as though fully restated

herein.

103.　　Beginning in or about June 2014, and continuing to on or about December 17,

2014, in the Northern District of Ohio, Western Division, and elsewhere, Defendants AROLDO

RIGOBERTO CASTILLO-SERRANO aka BRUNO LOPEZ-ZALAS, ANA ANGELICA

PEDRO JUAN aka JUANITA aka ERICA MAISONET, and CONRADO SALGADO SOTO,

aiding and abetting each other, did knowingly provide and obtain the labor and services of

Victim 2, and knowingly benefitted, financially and by receiving anything of value, from

participation in a venture which provided and obtained the labor and services of Victim 2,

knowing and in reckless disregard of the fact that the labor and services were obtained by means

of force, threats of force, physical restraint, and threats of physical restraint to Victim 2 and other

persons; by means of serious harm and threats of serious harm to Victim 2 and other persons; by

means of the abuse and threatened abuse of law or legal process; and by means of a scheme,

plan, and pattern intended to cause Victim 2 to believe that, if he did not perform such labor or

services, he and other persons would suffer serious harm or physical restraint.

In violation of Title 18, United States Code, Sections 1589(a) and (b), and 2.

## COUNT 4
### (Forced Labor – 18 U.S.C. § 1589)

The Grand Jury further charges:

104.    The allegations set forth in paragraphs 1 through 28, 33 through 50, and 61

through 66 are re-alleged and incorporated by reference in this count, as though fully restated

herein.

105.    Beginning in or about June 2014, and continuing to on or about December 17,

2014, in the Northern District of Ohio, Western Division, and elsewhere, Defendants AROLDO

RIGOBERTO CASTILLO-SERRANO aka BRUNO LOPEZ-ZALAS and ANA ANGELICA

PEDRO JUAN aka JUANITA aka ERICA MAISONET, aiding and abetting each other, did

knowingly provide and obtain the labor and services of Victim 3, and knowingly benefitted,

financially and by receiving anything of value, from participation in a venture which provided

and obtained the labor and services of Victim 3, knowing and in reckless disregard of the fact

that the labor and services were obtained by means of force, threats of force, physical restraint,

and threats of physical restraint to Victim 3 and other persons; by means of serious harm and

threats of serious harm to Victim 3 and other persons; by means of the abuse and threatened

abuse of law and legal process; and by means of a scheme, plan, and pattern intended to cause

Victim 3 to believe that, if he did not perform such labor or services, he and other persons would

suffer serious harm or physical restraint.

In violation of Title 18, United States Code, Sections 1589(a), 1589(b), and 2.

21

## COUNT 5
(Forced Labor – 18 U.S.C. § 1589)

The Grand Jury further charges:

106.     The allegations set forth in paragraphs 1 through 28, 33 through 50, and 67 through 69 are re-alleged and incorporated by reference in this count, as though fully restated herein.

107.     Beginning in or about June 2014, and continuing to on or about December 17, 2014, in the Northern District of Ohio, Western Division, and elsewhere, Defendants AROLDO RIGOBERTO CASTILLO-SERRANO aka BRUNO LOPEZ-ZALAS, ANA ANGELICA PEDRO JUAN aka JUANITA aka ERICA MAISONET, and CONRADO SALGADO SOTO, aiding and abetting each other, did knowingly provide and obtain the labor and services of Victim 4, and knowingly benefitted, financially and by receiving anything of value, from participation in a venture which provided and obtained the labor and services of Victim 4, knowing and in reckless disregard of the fact that the labor and services were obtained by means of force, threats of force, physical restraint, and threats of physical restraint to Victim 4 and other persons; by means of serious harm and threats of serious harm to Victim 4 and other persons; by means of the abuse and threatened abuse of law or legal process; and by means of a scheme, plan, and pattern intended to cause Victim 4 to believe that, if he did not perform such labor or services, he and other persons would suffer serious harm or physical restraint.

In violation of Title 18, United States Code, Sections 1589(a) and (b), and 2.

22

## COUNT 6
(Forced Labor – 18 U.S.C. § 1589)

The Grand Jury further charges:

108.    The allegations set forth in paragraphs 1 through 28, 33 through 50, and 70 through 74 are re-alleged and incorporated by reference in this count, as though fully restated herein.

109.    Beginning in or about June 2014, and continuing to on or about December 17, 2014, in the Northern District of Ohio, Western Division, and elsewhere, Defendants AROLDO RIGOBERTO CASTILLO-SERRANO aka BRUNO LOPEZ-ZALAS, ANA ANGELICA PEDRO JUAN aka JUANITA aka ERICA MAISONET, and CONRADO SALGADO SOTO, aiding and abetting each other, did knowingly provide and obtain the labor and services of Victim 5, and knowingly benefitted, financially and by receiving anything of value, from participation in a venture which provided and obtained the labor and services of Victim 5, knowing and in reckless disregard of the fact that the labor and services were obtained by means of force, threats of force, physical restraint, and threats of physical restraint to Victim 5 and other persons; by means of serious harm and threats of serious harm to Victim 5 and other persons; by means of the abuse and threatened abuse of law or legal process; and by means of a scheme, plan, and pattern intended to cause Victim 5 to believe that, if he did not perform such labor or services, he and other persons would suffer serious harm or physical restraint.

In violation of Title 18, United States Code, Sections 1589(a) and (b), and 2.

23

COUNT 7
(Forced Labor – 18 U.S.C. § 1589)

The Grand Jury further charges:

110.    The allegations set forth in paragraphs 1 through 28, 33 through 50, and 75

through 80 are re-alleged and incorporated by reference in this count, as though fully restated

herein.

111.    Beginning in or about June 2014, and continuing to on or about December 17,

2014, in the Northern District of Ohio, Western Division, and elsewhere, Defendants AROLDO

RIGOBERTO CASTILLO-SERRANO aka BRUNO LOPEZ-ZALAS, ANA ANGELICA

PEDRO JUAN aka JUANITA aka ERICA MAISONET, and CONRADO SALGADO SOTO,

aiding and abetting each other, did knowingly provide and obtain the labor and services of

Victim 6, and knowingly benefitted, financially and by receiving anything of value, from

participation in a venture which provided and obtained the labor and services of Victim 6,

knowing and in reckless disregard of the fact that the labor and services were obtained by means

of force, threats of force, physical restraint, and threats of physical restraint to Victim 6 and other

persons; by means of serious harm and threats of serious harm to Victim 6 and other persons; by

means of the abuse and threatened abuse of law or legal process; and by means of a scheme,

plan, and pattern intended to cause Victim 6 to believe that, if he did not perform such labor or

services, he and other persons would suffer serious harm or physical restraint.

In violation of Title 18, United States Code, Sections 1589(a) and (b), and 2.

## COUNT 8
(Forced Labor – 18 U.S.C. § 1589)

The Grand Jury further charges:

112.    The allegations set forth in paragraphs 1 through 28, 33 through 50, and 81 through 85 are re-alleged and incorporated by reference in this count, as though fully restated herein.

113.    Beginning in or about January 2011, and continuing to on or about December 17, 2014, in the Northern District of Ohio, Western Division, and elsewhere, Defendants AROLDO RIGOBERTO CASTILLO-SERRANO aka BRUNO LOPEZ-ZALAS and CONRADO SALGADO SOTO, aiding and abetting each other, did knowingly provide and obtain the labor and services of Victim 7, and knowingly benefitted, financially and by receiving anything of value, from participation in a venture which provided and obtained the labor and services of Victim 7, knowing and in reckless disregard of the fact that the labor and services were obtained by means of force, threats of force, physical restraint, and threats of physical restraint to Victim 7 and other persons; by means of serious harm and threats of serious harm to Victim 7 and other persons; by means of the abuse and threatened abuse of law or legal process; and by means of a scheme, plan, and pattern intended to cause Victim 7 to believe that, if he did not perform such labor or services, he and other persons would suffer serious harm or physical restraint.

In violation of Title 18, United States Code, Sections 1589(a) and (b), and 2.

## COUNT 9
### (Forced Labor – 18 U.S.C. § 1589)

The Grand Jury further charges:

114.    The allegations set forth in paragraphs 1 through 28, 33 through 50, and 86

through 88 are re-alleged and incorporated by reference in this count, as though fully restated

herein.

115.    Beginning in or about June 2014, and continuing to on or about December 17,

2014, in the Northern District of Ohio, Western Division, and elsewhere, Defendants AROLDO

RIGOBERTO CASTILLO-SERRANO aka BRUNO LOPEZ-ZALAS and ANA ANGELICA

PEDRO JUAN aka JUANITA aka ERICA MAISONET, aiding and abetting each other, did

knowingly provide and obtain the labor and services of Victim 8, and knowingly benefitted,

financially and by receiving anything of value, from participation in a venture which provided

and obtained the labor and services of Victim 8, knowing and in reckless disregard of the fact

that the labor and services were obtained by means of force, threats of force, physical restraint,

and threats of physical restraint to Victim 8 and other persons; by means of serious harm and

threats of serious harm to Victim 8 and other persons; by means of the abuse and threatened

abuse of law or legal process; and by means of a scheme, plan, and pattern intended to cause

Victim 8 to believe that, if he did not perform such labor or services, he and other persons would

suffer serious harm or physical restraint.

In violation of Title 18, United States Code, Sections 1589(a) and (b), and 2.

COUNT 10
(Forced Labor – 18 U.S.C. § 1589)

The Grand Jury further charges:

116.    The allegations set forth in paragraphs 1 through 28, 33 through 50, and 89 through 93 are re-alleged and incorporated by reference in this count, as though fully restated herein.

117.    Beginning in or about June 2014, and continuing to on or about December 17, 2014, in the Northern District of Ohio, Western Division, and elsewhere, Defendants AROLDO RIGOBERTO CASTILLO-SERRANO aka BRUNO LOPEZ-ZALAS, ANA ANGELICA PEDRO JUAN aka JUANITA aka ERICA MAISONET, and CONRADO SALGADO SOTO, aiding and abetting each other, did knowingly provide and obtain the labor and services of Victim 9, and knowingly benefitted, financially and by receiving anything of value, from participation in a venture which provided and obtained the labor and services of Victim 9, knowing and in reckless disregard of the fact that the labor and services were obtained by means of force, threats of force, physical restraint, and threats of physical restraint to Victim 9 and other persons; by means of serious harm and threats of serious harm to Victim 9 and other persons; by means of the abuse and threatened abuse of law or legal process; and by means of a scheme, plan, and pattern intended to cause Victim 9 to believe that, if he did not perform such labor or services, he and other persons would suffer serious harm or physical restraint.

In violation of Title 18, United States Code, Sections 1589(a) and (b), and 2.

COUNT 11
(Attempted Forced Labor – 18 U.S.C. § 1594(a))

The Grand Jury further charges:

118.    The allegations set forth in paragraphs 1 through 28, 33 through 50, and 94 through 96 are re-alleged and incorporated by reference in this count, as though fully restated herein.

119.    From in or about April 2013, to in or about November 2013, in the Northern District of Ohio, Western Division, and elsewhere, Defendants AROLDO RIGOBERTO CASTILLO-SERRANO aka BRUNO LOPEZ-ZALAS and CONRADO SALGADO SOTO, aiding and abetting each other, knowingly attempted to provide and obtain the labor and services of Victim 10, and knowingly attempted to benefit, financially and by receiving anything of value, from participation in a venture which provided and obtained the labor and services of Victim 10, knowing and in reckless disregard of the fact that the labor and services were obtained by means of force, threats of force, physical restraint, and threats of physical restraint to Victim 10 and other persons; by means of serious harm and threats of serious harm to Victim 10 and other persons; by means of the abuse and threatened abuse of law or legal process; and by means of a scheme, plan, and pattern intended to cause Victim 10 to believe that, if he did not perform such labor or services, he and other persons would suffer serious harm or physical restraint.

In violation of Title 18, United States Code, Sections 1594(a) and 2.

28

COUNT 12
(Witness Tampering – 18 U.S.C. §§ 1512(b)(3))

The Grand Jury further charges:

120.    The allegations set forth in paragraphs 1 through 28 and 33 through 99 are re-alleged and incorporated by reference in this count, as though fully restated herein.

121.    In or about December 2014, in the Northern District of Ohio, Western Division, and elsewhere, defendants AROLDO CASTILLO-SERRANO aka BRUNO LOPEZ-ZALAS and ANA ANGELICA PEDRO JUAN aka JUANITA aka ERICA MAISONET, along with others known and unknown to the Grand Jury, did knowingly intimidate and corruptly persuade M.C.G., and attempt to do so, with the intent to hinder, delay, and prevent the communication to a federal law enforcement officer of information relating to the commission or possible commission of a federal offense. Specifically, after discussing the federal investigation with CASTILLO-SERRANO, and M.C.G.'s knowledge of same, PEDRO JUAN asked and told M.C.G. not to report to law enforcement information about the conspiracy, forced labor, and harboring offenses committed by Defendants.

In violation of Title 18, United States Code, Sections 1512(b)(3) and 2.

COUNT 13
(False Statements – 18 U.S.C. § 1001(a)(2))

The Grand Jury further charges:

122.    The allegations set forth in paragraphs 1 through 28 and 33 through 99 are re-

alleged and incorporated by reference in this count, as though fully restated herein.

123.    In or about December 2014, in the Northern District of Ohio, Western Division,

and elsewhere, Defendant ANA ANGELICA PEDRO JUAN aka JUANITA aka ERICA

MAISONET, in a matter within the jurisdiction of the executive branch of the Government of the

United States, did knowingly and willfully make materially false, fictitious, and fraudulent

statements and representations, in that Defendant PEDRO JUAN represented to an agent of the

Federal Bureau of Investigation, which is an agency of the executive branch of the federal

government, that that she did not have first-hand knowledge of CASTILLO-SERRANO's

smuggling activities, that she did not withhold victims' wages from them, that she did not send

victims' wages to Guatemalan accounts at CASTILLO-SERRANO's behest, that she did not

have a close relationship with CASTILLO-SERRANO, that she was not in contact with

CASTILLO-SERRANO, that she did not know where CASTILLO-SERRANO was, and that she

did not advise M.C.G. to lie to the FBI.

In violation of Title 18, United States Code, Section 1001(a)(2).

30

COUNT 14
(Encouraging Illegal Entry – 8 U.S.C. § 1324(a))

The Grand Jury further charges:

124.    The allegations set forth in paragraphs 1 through 28 and 33 through 99 re-alleged and incorporated by reference in this count, as though fully restated herein.

125.    In or about September 2014, in the Northern District of Ohio, Western Division, and elsewhere, AROLDO CASTILLO-SERRANO aka BRUNO LOPEZ-ZALAS and CONRADO SALGADO SOTO, aiding and abetting each other, along with others known and unknown to the Grand Jury, encouraged and induced an alien, namely Victims 2, 3, 4, 5, 6, and 9, all minors, to come to, enter, and reside in the United States, knowingly and in reckless disregard of the fact that the victims' coming to, entry, and residence in the United States was in violation of law. The Defendants' acts were for the purpose of commercial advantage and private financial gain and part of an ongoing commercial organization and enterprise.

In violation of Title 8, United States Code, Sections 1324(a)(1)(A)(iv), 1324(a)(1)(A)(v)(II), 1324(a)(1)(B)(i), and 1324(a)(4)(A).

31

COUNT 15
(Harboring an Illegal Alien – 8 U.S.C. § 1324(a))

The Grand Jury further charges:

126.    The allegations set forth in paragraphs 1 through 28 and 33 through 99 are re-alleged and incorporated by reference in this count, as though fully restated herein.

127.    From in or about July 2013, to in or about December 2014, in the Northern District of Ohio, Western Division, and elsewhere, defendants CONRADO SALGADO SOTO and PABLO DURAN, JR., along with Bartolo Dominguez, Conrado Salgado-Borban, and other persons known and unknown to the Grand Jury, knowingly and in reckless disregard of the fact that an alien had come to, entered, and remained in the United States in violation of law, transported and moved an alien within the United States by means of transportation, in furtherance of such violation of law and for the purpose of commercial advantage and private financial gain and as part of an ongoing commercial organization and enterprise, to wit: CONRADO SALGADO SOTO and PABLO DURAN, JR., drove a number of Guatemalan aliens, including Victim 3 (a minor), Victim 8 (a minor), and M.C.G. (a minor) from Marion, Ohio, to egg farms in Croton, Mount Victory, Goshen, and LaRue, Ohio, where the aliens were working, and then back to Marion, Ohio at the end of the aliens' work shift.

In violation of Title 8, United States Code, Sections 1324(a)(1)(A)(ii), 1324(a)(1)(B)(i), and 1324(a)(4)(A).

A TRUE BILL.

Original document  - Signatures on file with the Clerk of Courts, pursuant to the E-Government Act of 2002.