IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 3:15cr24-04 |
| Plaintiff, | ) | Judge James G. Carr |
| -vs- | ) | **DEFENDANT'S SENTENCING MEMORANDUM** |
| PABLO DURAN, JR. | ) | |
| Defendant. | ) | Jeffrey P. Nunnari (0059691) 3349 Executive Parkway Suite D |
| | ) | Toledo, Ohio 43606 Telephone: (419) 578-9246 |
| | ) | Facsimile: (419) 531-5675 E-mail: jp59691@yahoo.com |
| | ) | www.jeffreynunnarilaw.com |
| | ) | Counsel for Defendant |

Now comes the Defendant, Pablo Duran, Jr., ("Pablo"), by and through counsel, who pursuant to the sentencing principles set forth in 18 U.S.C. §3553(a) and *United States v. Booker,* 543 U.S. 220 (2005), requests the court to impose a sentence at the lowest-end of the applicable guideline range, as such a sanction is sufficient, but not greater than necessary, to satisfy the statutory sentencing objectives in this case. In support of his request, Pablo submits the following:

18 U.S.C. §3553(a) instructs that the court should impose a sentence which is sufficient, but not greater than, that which is necessary to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offender's conduct. The court must also fashion its sentence in such a way as to afford adequate deterrence to others to engage in similar conduct, to protect the public, and to provide the offender with needed educational or vocational training or other correctional treatment in the most effective manner. With these aims in mind, Pablo asks the court to consider the following information:

1. Mr. Duran Jr.'s History and Characteristics.

Pablo is a handsome young man of 24 years of age. He has a beautiful wife, Enedina, and two, small, beautiful children, ages three and one. His wife also has legal custody of her niece, age 13. Pablo takes no issue with the accuracy of the "Offender Characteristics" section of the PSR. But for all of its thoroughness, the PSR does not fully reflect Pablo's unique personality characteristics. While it describes accurately the overall function of the conspiracy (PSR ¶¶ 5 – 16), it is notable that Pablo's specific offense conduct is contained in only three paragraphs (PSR ¶¶ 18 – 20), and that the description contained therein is one of a minimal participant at the small end of the funnel. He was not in any way engaged in recruiting or "smuggling" aliens into the country. His role in the conspiracy was basically limited to transporting aliens to and from work sights and issuing their paychecks. He did not actually know, although he was very suspicious, that many of the aliens were here illegally, as employing illegals is an unfortunate, regular practice in the egg industry. He also heard tell that some of the aliens were working off debts to those who had a part in bringing them to this country. Beyond that, Pablo is just as much a victim of, as he is a participant in, the conspiracy.

2

Pablo started working in the egg industry in Iowa for his father at the age of fourteen. He performed then much of the same work he performed here in Ohio as part of the instant offense. He came to Ohio because his father told him there was work here and that he needed Pablo's help. Pablo trusted his father, and thought that his father was looking out for him by trying to guide him. Pablo later learned that his father knowingly placed him in a position to get into trouble and exploited his trust in his father. This was made all the more apparent when his father fled the country at or about the time of the arrests in this case, and who told him at that time that he (Pablo) was "under investigation" and "should be worried."

As indicated, Pablo's basic role in the conspiracy was to transport workers to and from jobsites and to issue their paychecks. Each laborer gave Pablo their ID and Social Security Numbers or International Taxpayer Identification Numbers so that he could write them their paychecks. Pablo never took the steps to determine if the IDs or the ITINs were valid. Moreover, he was never approached to write a check in a name different than any of his crewmembers.

As a crew leader, Pablo was very popular with the workers. This is because he treated them fairly. He paid them even when there was no money left over for himself. He never made the workers help pay for gas for their transportation because he considered it a "thank you" to them for all of their hard work. Pablo would buy food and Monster energy drinks for as many as 30 workers at a time, with his own money, because none of the workers ever had the opportunity to leave the worksites during their shifts and Pablo felt sympathy for them for this reason. Because of his generous and fair treatment of his workers, members of other crews often competed with one another to get on his crew.

3

Pablo was generous to a fault. He often went without so that his workers didn't have to. He never threatened or harmed anyone. He was simply trying to make a living for himself and his family and help out his father as a loyal son. As it is frequently said, "No good deed goes unpunished." But with all of that being said, Pablo has a more complete understanding of the wrongful nature of the activities of which he was a part, and a greater understanding of the harm he helped facilitate. In that sense, he has accepted responsibility for his actions and understands that there will be a penalty for it.

2. The Need for the Sentence Imposed to Reflect the Seriousness of the Conduct, to Promote Respect for the Law, to Punish the Defendant, to Deter Others from Similar Crimes, to Protect the Public, and to Provide the Defendant with Needed Educational, Vocational, or Other Correctional Treatment.

Pablo indicated to the government almost from the outset his desire to take responsibility for his conduct. By so doing, he has spared the government from preparing for a costly trial. For this, he should receive the utmost consideration at the time of sentencing. Because Pablo was willing to take responsibility, he and the government agreed to the Stipulated Guideline Computation:

| | |
|---|---|
| BOL | 12 |
| 6 -24 unlawful aliens transported | +3 |
| Transported unaccompanied minors | +2 |
| **Total Offense Level Before Acceptance** | **17** |

While the PSR computes Pablo's total offense level before acceptance at 19[1] based on the additional offense characteristic set forth in USSG § 2L1.1(b)(8)(A)(i), it is submitted that the Stipulated Guideline Calculation is the correct one given that Pablo himself never detained, threatened, nor demanded payment from anyone. Accordingly, with acceptance of

---

[1] This is the subject of Pablo's sole objection to the PSR.

4

responsibility, Pablo's total offense level is 14, absent any other adjustments. Should there arise at the sentencing hearing any other factor that will influence the total offense level, then Pablo should be sentenced at the low-end of whatever range that yields; otherwise, he should be sentenced at the low end of what the court determines the applicable guideline range is.

<u>3. Conclusion.</u>

*Wherefore,* based on the sentencing factors and the arguments set forth above, Mr. Duran, Jr., respectfully requests this court to impose a sentence at the lowest-end of the applicable guideline range, as such a sanction is sufficient, but not greater than necessary, to satisfy the statutory sentencing objectives in this case.

Respectfully submitted,

*/s/Jeffrey P. Nunnari*
Jeffrey P. Nunnari
Counsel for Defendant

Dated: April 1, 2016

**CERTIFICATION**

This is to certify that a copy of the foregoing will be served upon all other counsel of record by way of the court's ECF system on the date that it is filed.

*/s/Jeffrey P. Nunnari*
Jeffrey P. Nunnari